### HOGG v. MAXWELL et al.

(District Court, S. D. New York. May 23, 1916.)

1. DIVORCE ⟨Key⟩240(1)—HUSBAND AND WIFE ⟨Key⟩298(1)—SEPARATION—MAINTENANCE.

     Where a husband and wife separate, the wife is not absolutely entitled to one-third of her husband's income, nor does this rule apply to the granting of alimony; every case standing on its own facts.

     [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 675, 680; Dec. Dig. ⟨Key⟩240(1); Husband and Wife, Cent. Dig. § 1093; Dec. Dig. ⟨Key⟩ 298(1).]

2. HUSBAND AND WIFE ⟨Key⟩278(5)—SEPARATION—SEPARATION AGREEMENT.

     Where a husband and wife separated, and, neither desiring an action in the courts, entered into a contract whereby the husband was to pay the wife $5,200 per year during her natural life or until her remarriage as a separate maintenance, and the wife was represented by able and zealous counsel, such agreement will not be disturbed, after the death of the husband, on the ground that the husband's income entitled her to a greater sum; it appearing before the settlement that the wife, who was represented by counsel, asserted the husband was a millionaire, and that the husband and his counsel made the offer accepted, stating that it might be accepted or the wife would have to seek redress in the proper forum.

     [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1052; Dec. Dig. ⟨Key⟩278(5).]

In Equity. Bill by Caroline F. Hogg against Lascelles C. Maxwell and Thomas Y. Crafts, as executors of Charles B. Hogg, deceased, and others. Bill dismissed.

Wood, Cooke & Seitz, of New York City (William G. Cooke, of New York City, of counsel), for plaintiff.

Henry W. Simpson, of New York City (Thomas L. Hughes, of New York City, of counsel), for defendants.

MAYER, District Judge. This is the third litigation involving practically the same subject-matter. Hogg v. Lindridge, 151 App. Div. 514, 135 N. Y. Supp. 928; Hogg v. Lindridge, 151 App. Div. 885, 136 N. Y. Supp. 1137; Hogg v. Lindridge, 206 N. Y. 743, 100 N. E. 1128; Hogg v. Maxwell, 215 Fed. 360, 131 C. C. A. 502; Hogg v. Maxwell,

---

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

218 Fed. 356, 134 C. C. A. 164; Hogg v. Maxwell, — C. C. A. —, 229 Fed. 113.

In the instant suit, the bill alleges that on October 26, 1873, plaintiff and Charles B. Hogg were married; that they lived together until the latter part of 1904; that for a long period prior thereto Hogg had been guilty of conduct entitling plaintiff to a separation under the laws of New York; that on or about September 10, 1904, plaintiff employed counsel to obtain a decree of separation and alimony; and that on or about November 10, 1904, plaintiff left Hogg, and they never lived together thereafter. It is further alleged that, for the purpose of inducing plaintiff to refrain from beginning the separation suit and making application for alimony, Hogg agreed that if plaintiff would so refrain he would enter with her into an appropriate written agreement under seal which would secure her all the freedom a court judgment could give, and that Hogg "would in said instrument secure to her an annual allowance by way of alimony during her natural life of an amount equal to one-third of his annual income." At this time, plaintiff alleges, she did not know and had no means of ascertaining Hogg's property or income; that Hogg represented that he was a man of moderate fortune, with an income of not more than $15,000 per annum; that, relying on these representations, she consented "to accept as one-third" of Hogg's income the sum of $5,200 and executed an agreement accordingly; that after Hogg's death in January, 1911, it appeared that at the time of his representations his estate was worth $1,000,000, and his annual income was between $70,000 and $100,000 per annum.

After other necessary formal allegations, plaintiff prays: (1) That the separation agreement be adjudged fraudulent and void; (2) that it be reformed, so that its provisions shall be in specific performance "of the oral agreement theretofore made and hereinbefore set forth, whereby it was agreed that the plaintiff should receive annually during her lifetime or until her remarriage an amount equal to one-third of said Charles B. Hogg's income from the 28th day of January, 1905"; (3) that if, by reason of Hogg's death or any other cause, such relief cannot be afforded, then damages shall be awarded; (4) and (5) that other and further relief as may be just and equitable may be had.

The separation agreement, dated January 28, 1905, contained the provisions usual in such instruments, with the recital:.

"Whereas, divers disputes and differences have arisen between the said parties by reason whereof they have consented and agreed, and do hereby consent and agree, to live separate and apart from each other in the future and during their natural lives, unless they shall mutually agree to vacate this agreement."

It was also provided that, in case plaintiff brought any action "to compel or induce him [Hogg] to pay or allow * * * her" any alimony, except as herein provided, then at the option of Hogg the agreement shall become "null, void, and of no effect." Plaintiff was also allowed to do with her personal and real property as she wished. Nowhere in the agreement was there any representation as to Hogg's property, income, or financial ability.

Hogg's will showed that he had a deep affection for his relatives and friends and a just regard for his children, for, after bequests to his brother, nephews, nieces, sons-in-law, and friends, he devised and bequeathed his property in trust in equal shares for the benefit of his three daughters, with usual provisions over to their children. These daughters were children of a former marriage. Plaintiff and Hogg had no issue.

It is stipulated that Hogg was worth $1,000,000 in January, 1905, and then had an income of $50,000 per annum. At the time of the negotiations infra, plaintiff had left her husband and was not living with him, as appears from her own allegation in the bill and from the testimony. The attorneys who represented her were Frederick D. Philips and Charles K. Carpenter, of the firm of Daly, Hoyt & Mason, while Freling H. Smith represented Hogg.

There is a difference of recollection between these gentlemen as to certain parts of the conversations which took place between them, but, fortunately, that difference does not affect the result. I have long known Mr. Philips and Mr. Carpenter, and have implicit confidence in them. Mr. Smith is an old-time practitioner at our bar, who has now retired, and whose integrity of statement is likewise unquestioned. It would, indeed, be embarrassing if a question of veracity were involved. However, it is not easy to separate conversations from impressions and conclusions, and it often happens in a delicate negotiation that one man means one thing, and the other draws his own and a different conclusion than it was intended he should, and both men are entirely honest in their recollection of what took place.

At the outset it is clear that no such representation as to $5,200 being one-third of his income, as is alleged in the bill, was made by either Hogg or his attorney Smith. Had such a definite statement been made and relied upon by plaintiff, a court of equity would go far to overcome technical obstacles in order to remedy the wrong. But what did take place was a negotiation at arm's length, conducted for plaintiff by her attorneys and for Hogg, in the main, by his attorney. It appears that Mr. Carpenter saw Hogg at the Standard Oil office in January, 1905. He testified:

"Mr. Hogg stated that they had had considerable trouble; and he told me a number of facts, as he alleged them, which constituted their difficulties from his point of view. He said he was entirely desirous of giving his wife ample support; that he did not want a separation by litigation, but would prefer to have a separation by agreement, if that became necessary; that he desired to provide for his wife, in every way, and that he was not a wealthy man, but would have to limit his provision in accordance with his means. He referred me to his attorney Mr. Freling H. Smith. He said he would notify Mr. Smith of my call upon him, and that we could get in touch with Mr. Smith."

It will be noted that at the beginning Hogg gave his version of the situation from his point of view, though what the matrimonial difficulties were is not disclosed anywhere in the testimony. Continuing and summarizing the testimony adduced on behalf of plaintiff (as fairly set forth in defendants' brief), Carpenter subsequently had an interview with Smith and Hogg, at which Philips was present. Carpenter

at that time told the others that his client would prefer a separation by agreement, and there was no contest by Hogg and Smith over that proposition as to there being a separation. The discussion resolved itself into a question of the amount of the allowance which would be made under the articles of separation. Smith then stated that Hogg would make an agreement and provide for the payment of about $5,000 a year to plaintiff. Carpenter says he stated that it was not in accordance with their ideas and was dependent upon Hogg's income. He says it was told to them in some form that Hogg was not a wealthy man; that $5,000 was all that he would do. Philips suggested that it should be at least $10,000, and that amount they refused, with a statement that it was a larger sum than Hogg could afford, and was a larger sum than was the usual appropriate share which a wife would receive out of her husband's income upon such an agreement; that provision would be made in Hogg's will for a continuation of the agreed allowance.

The terms of the proposition were not accepted at that time. Carpenter and Philips reported the facts of the interview to plaintiff. Carpenter's recollection is that they stated that $10,000 was more than the usual share which a wife would have out of her husband's income; but he has no recollection so that he can testify that a specific proportion was mentioned. His recollection is that at one point of the interview the statement took the form that the amount of $10,000 was more than they would be able to recover in an action for separation. Philips was present at the interview of January 12th to which Carpenter referred. His recollection is that the proposed separation was reviewed, and also the fact that no serious objection would be raised to a separation accomplished through an agreement, instead of through a decree. He says that either Carpenter or he explained that they had been given to understand that Hogg was a man of some means, that his income was in the neighborhood of $30,000, and, that being so, an allowance by way of alimony in the neighborhood of $10,000 would be reasonable and fair, and that proposition was presented, and thereupon a statement was made by Smith that their information in regard to Hogg's financial ability was incorrect, that instead of being a man of large property he did not possess large means, and that $5,000 would be a very fair allowance by way of alimony under the agreement, and that no sum in excess of $5,000 could be recovered by plaintiff if she undertook to litigate and investigated the facts in regard to Hogg's property. Philips says that Hogg said that he was not a man of large property.

Philips saw Smith later and tried to get a modification of the offer at $7,500, which Smith declined to entertain. He said that Smith would do nothing further, except possibly to increase the previous offer from $5,000 to $5,200, and again stated that, if the matter were litigated, no other result could be accomplished. He says that Smith called his attention to the fact that plaintiff herself possessed a few shares of Standard Oil stock in her own right. Philips says that he telephoned to Smith later that the offer was inadequate and tried to get it modified, and Smith told him that the offer of $5,200 was final.

Philips told Smith that if that was the best they were willing to do plaintiff was not solicitous of having the matter placed in litigation and the offer would be accepted. Philips says that he cannot remember the exact language used as to Hogg's financial ability, but it was to the effect that he was a poor man in the ordinary sense of the word; that an allowance of $5,000 as alimony for his wife was all that Hogg could be forced to pay if an action for a separation had been brought and the ability of Hogg to pay had been subjected to a financial test.

Philips says that at the first interview he did not know where he got the information, but submitted the proposition for $10,000 allowance on the assumed basis of an income of $30,000; that he went into that proposition "on the proposition that Mr. Hogg was a man of considerable wealth." He says that in taking up the question Philips told Smith that they had been informed that he was a man of large means, that his income was in the neighborhood of at least $30,000, and they therefore suggested alimony of say $10,000 to be inserted in the agreement. Philips was asked by the court:

"Was anything said at that time, either the first or second interview, by either Mr. Hogg or Mr. Smith, that if you—in substance or effect, if you could not come to terms, you have to fight it out in court?"

And answered:

"Oh yes, that was said; and their attitude was one of more or less indifference as to what we did. That is the way—my recollection of the thing is, that we could either take this or go without. That was their general attitude."

Philips says that the merits of the separation situation were not discussed. Carpenter says that his recollection is that nothing whatever was said about the merits of the case at any of the interviews, and that the entire subject of the inquiry was the amount of the alimony. Carpenter testifies that the amount offered was a definite proposition, and that if they did not take it they could go ahead and sue. He says that the position of Hogg and Smith was that plaintiff must take the amount that was offered or she could litigate; it was put in such words as to affect an attitude of indifference on their part as to which they did. Carpenter days the question as to which could prevail on the merits in a litigation was not mentioned in any way or form.

In plaintiff's deposition she says she believed what Carpenter told her, and that she signed the agreement, relying upon the truth of the statements reported to her by Carpenter as having been made by Hogg and Simpson (possibly Smith was meant). She signed the papers, believing her husband told her the truth. It appears that Carpenter says he told plaintiff the facts of the interview.

Without detailing all the particulars in which Smith's testimony differed from that of Philips and Carpenter, Smith is positive that he said:

"Mr. Hogg will not pay Mrs. Hogg $7,500 a year. He will give her $5,200 a year, which is $100 a week. Mrs. Hogg has no legal claims whatever on Mr. Hogg. She has left his home; refuses to return, although he asked her to do so. The fact is that Mr. Hogg is in a position, if he saw fit, to get a limited divorce from Mrs. Hogg; but he does not care for it, and does not wish it. He thinks $5,200 a year, with what he has already given her, is

ample, and more than ample, for her wants; and if you don't care to take that you can leave it."

And that Carpenter said:

"We will accept it."

Finally, at the end of the trial, Philips testified in rebuttal:

"The proposition that was put up to us was this: That we could accept the $5,000 offer, or we could take a lawsuit; but, if we did take a lawsuit, we could not recover any more than we would have received under the agreement. That was the proposition that we received; the proposition that was submitted to Mrs. Hogg; the proposition on which the basis of the alimony settlement of $5,200 was made."

It is perfectly plain that Hogg nowhere admitted that plaintiff was entitled to a separation as matter of right, and that he had his own point of view of the troubles between his wife and himself, and told it to Carpenter at their first interview. It is equally plain that he was willing to enter into a separation agreement, rather than have a court controversy, and such it may fairly be inferred was also plaintiff's view and desire. It is also established by the testimony of both sides that Hogg and his attorney refused to raise their offer, either were indifferent or assumed that attitude, and unequivocally took the position that, if the offer was not accepted, the plaintiff must resort to the courts. There is a sharp conflict as to the statements made as to Hogg's financial condition at the interviews at which Smith was present; but it is entirely certain that Smith never raised the figures beyond $5,200, and the conclusion cannot be drawn, as plaintiff contends, that the only open question from Hogg's and Smith's point of view, if the case went to court, would be the amount which the court would award.

On the contrary, if Hogg had been advised or believed that plaintiff would win an action for limited divorce, it is hardly conceivable that he would have risked a lawsuit when he knew that his financial ability must become the subject of judicial inquiry.

[1, 2] What, therefore, this court is asked to do is to remake the agreement between the parties without knowing the true inwardness of their marital troubles, without knowing the stability or sources as would then have appeared of Hogg's financial condition, his personal and business needs, his obligations, legal or moral, to his female children, either as they were or as he believed them to be, and the numerous other details which a court should have before it in order to fix a just allowance by way of alimony. While often the courts award to a wife one-third of the husband's income, there is not and cannot be a set rule, for every case stands on its own facts. Daniels v. Benedict, 97 Fed. 367, 38 C. C. A. 592; Walker v. Walker Ex'rs, 9 Wall. 743, 19 L. Ed. 814; Schmoltz v. Schmoltz, 116 Mich. 692, 75 N. W. 135.

Further, what was it upon which plaintiff relied? Presumably she was informed by her attorneys of all that took place, including, in effect, the challenge to litigate if she did not accept her husband's terms. Besides, she had said her husband was a millionaire, and evidently their life at the New Jersey home was comparatively luxurious. I do not construe literally her observation as to her husband being a millionaire,

but it indicates that she thought him a wealthy man, and therefore capable of allowing her more than $5,200 per annum.

Who can say what operated on her mind? She may have shrunk from the publicity of a matrimonial lawsuit, as do all self-respecting people. She may have felt that, even though she believed her cause just, the contingencies of litigation might spell defeat; for courts do not allow separations for mere incompatibility or petty differences which fall short of the statutory requirements of the New York Code, § 1762. She may have concluded that $5,200 per annum, plus the income from her Standard Oil stock and her father's allowance, met her requirements. On the other hand, who shall say that the dead man's provision was unjust? He is not here to tell us what influenced him, whether he thought that he was without fault and that the fault was entirely hers. She had left his home. Was she right or wrong in so doing? He kept his agreement with her to the letter, including the disposition by will. He must have had a deep affection for his children, if his will gives a true indication, and may have felt that he should secure them in an income to which, as his children, he thought they were entitled. What were his views as to his financial security and his future health, for he was no longer a young man?

It would, indeed, be a dangerous precedent if, after a man's death, a separation agreement could be set aside which was arrived at, not by a dominant control of a strong man over an inexperienced woman, not by a definite representation, such as one-third, followed by an urgent insistence on acceptance, but by a series of interviews between skilled counsel, in which a "take it or leave it" proposition, made and not receded from, is finally deliberately accepted.

Such would be my conclusion if the case were one of first impression, but upon this I need not solely rely: for on the various questions of law involved there is abundant authority in favor of defendants' position. Johnson v. Johnson, 206 N. Y. 561, 100 N. E. 408, Ann. Cas. 1914B, 407; Schmoltz v. Schmoltz, 116 Mich. 692, 75 N. W. 135; Hogg v. Lindridge, 151 App. Div. 513, 135 N. Y. Supp. 928; Hegerich v. Keddie, 99 N. Y. 258, 1 N. E. 787, 52 Am. Rep. 25.

The bill is dismissed.

---

⬤➛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes