M. P. CARROLL v. MRS. S. E. SPRINGER et al.

Western Section. July 23, 1931.

Petition for Certiorari denied by Supreme Court, March 5, 1932.

Wood & Brooks, of Selmer, for appellees.

W. H. Kier, of Corinth, Miss., and M. E. Lee, of Selmer, for appellant.

OWEN, J.   The bill in this cause was filed by the nephews and neices of one, S. L. Springer, late a citizen of McNairy County, Tennessee, who died intestate at his home in said county in November, 1929.

S. L. Springer left no children, no issue or descendants of any children, but left the children or heirs of seven brothers and sisters, who had died prior to the death of S. L. Springer.

The bill was filed for the sale for partition of about 400 acres of land owned by S. L. Springer at the time of his death, which lands were located partly in Tennessee, McNairy County and partly in Alcorn County, Mississippi.

About six years prior to his death, S. L. Springer married the defendant, Mrs. S. E. Springer, on the 25th day of September, 1923. They lived together at S. L. Springer's home until the 7th of January, 1924, for a period of about three and one-half months. At the time of the marriage, S. L. Springer was seventy-eight years of age, and the defendant Mrs. S. E. Springer was seventy-two years of age; both parties had entered into prior marriages. S. L. Springer had been a widower for many years, and the defendant, Mrs. S. E. Springer had been a widow for more than twenty years; neither had any children by their previous marriages.

About two weeks after the 7th of January, the following contract for separation and maintenance was entered into:

Whereas, on the 25th day of September, 1923, S. L. Springer and I, Mrs. S. E. Springer, were legally and lawfully married in Alcorn County, State of Mississippi, and that since said date and until a short time ago, we have been living together as husband and wife; but it has developed that it is impossible for us to get along together with that peace and unity which should characterize the lives of a husband and wife, and having determined that it would be for the best interest of both of us that this date we live separate and apart.

Now, therefore, in consideration of the sum of $1,000 to me in hand paid by S. L. Springer, the receipt of which is hereby acknowledged, I hereby agree that I will live separate and apart from him the said S. L. Springer, as it utterly impossible for us to agree, and for the same consideration I hereby agree that the said sum of $1,000 shall be in full settlement and satisfaction of any and all claims that I now, or may have against the said S. L. Springer for support and maintenance, or any claim for alimony, or attorney's fees should either of us bring suit for divorce, and I further relinquish any and all rights which I might have as an heir at law of the said S. L. Springer to any of his estate, should he die before I do, and I agree to make no further claim, or demand upon him for anything.

Witness my signature, this the 15th day of January, 1924.

(SIGNED) MRS. S. E. SPRINGER.

Witnesses:

Lee Gray

J. H. Pittman

It is the above agreement that is before this court for consideration and is the only question before the court on this appeal.

Mrs. S. E. Springer was made a party to the partition proceeding. It was alleged that she did not have any interest in said estate unless she was entitled to something regardless of her executing the above paper or agreement.

Mrs. Springer filed an answer and cross-bill. She alleged that said paper was void and against public policy; that her husband left an estate of $25,000 or more, and that said paper was executed without adequate consideration. The complainants answered the cross-bill, denying all of the material allegations, and upon the hearing the Chancellor dismissed the cross-bill and ordered the lands of S. L. Springer sold for partition. Cross-complaint, Mrs. S. E. Springer excepted to the decree and appealed. She perfected her appeal. But it appears that since her appeal was perfected, Mrs. S. E. Springer has died intestate, and her niece, Mrs. Ida M. Miller has qualified as administratrix, and the cause, by consent, has been revived in the name of the administratrix.

In her answer, Mrs. Springer admitted that the lands of her deceased husband could not be partitioned in kind, and she asked that the lands be sold and her homestead and dower rights be ascertained and allowed to her in cash.

The appellant has assigned three errors. By these errors it is insisted that the court erred in dismissing the cross-bill, and in not declaring the separation agreement heretofore set out null and void and of no validity, and in not holding that the cross-complainant was entitled to the interest of a widow, and heir of the deceased husband in his property, both real and personal. The sufficiency of these assignments are challenged by the appellees, and it is insisted that they do not comply with the rules of this court; the assignments do not strictly comply with the rules of this court. They are rather general, but we will disallow a motion to affirm for the want of proper assignments, and we will give due and proper consideration to the question insisted on by the appellant. The facts necessary to state are as follows: It appears that S. L. Springer owned about 400 acres of land; part of which was in McNairy County, Tennessee, and part was in the State of Mississippi. These 400 acres of land were made up of several small tracts, but were adjoining each other and constituted one tract. About seventy acres of the land were cleared. It rented in 1930 for $129. The land is certainly of poor quality.

The appellant and her husband were married at Corinth, Mississippi, in the home of a friend of the appellant, Mr. Frank Taylor. Very shortly after their marriage they came to the husband's home in McNairy County, and the appellant states that he treated her very properly and considerately for about a month, when she no-

198

ticed that the defendant began to drink intoxicating liquors, and act a little queer.

On the day of the separation, the appellant stated that she was going to the mail box, about a mile from her home. Her husband insisted that he send a tenant, one Tillman Malone, for the mail. The appellant would not agree to this. The appellant stated that she was going for the mail and would stop at the home of Mr. Aaron Potts, who lived near the mail box. The husband insisted that Malone should hitch up a horse and buggy for the appellant to use. She declined this offer, said she would rather walk.

It appears that the husband had received a fall and broke or dislocated his arm as he was bringing in a load of wood shortly before the separation. The appellant did not return, but spent ten or twelve days in the home of Mr. and Mrs. Aaron Potts. She went to her husband's home sometime within four or five days after she left on January 7th, accompanied by Mr. and Mrs. Potts, and got her effects that she had at her husband's and took them to the home of Mr. and Mrs. Potts; what she had in her husband's home, the record does not state, but we infer it was her wearing apparel.  .  .  . She and Mr. and Mrs. Potts drove to her husband's in a wagon. She states that she spoke to her husband on this occasion, and he spoke, but they had no conversation.

She consulted a lawyer, a Mr. Sweat of Corinth, Mississippi, about her rights, but did not employ the attorney. The agreement which the appellant signed was drawn by Judge Thomas H. Johnson, now Circuit Judge of the First Judicial District of Mississippi, but in January, 1924, he was County Prosecuting Attorney at Corinth, Mississippi. Mr. Johnson had about forgotten the circumstances surrounding the drafting of the instrument. Appellant admitted she signed it, but stated that she had no knowledge of what property her husband had; that she had been told that if she didn't take the $1000 that she would not get anything. It appears that the next day after she signed this document, one Mr. Williamson called on the appellant, who was at the home of Mr. Frank Taylor, her friend, and in whose home she had married S. L. Springer a few months prior thereto. Mr. Williamson told the appellant that he had two checks for $500 each, that he would go to the bank and get the money and bring it to her, which he did. The appellant received the $1000. Her friend, Mr. Frank Taylor counted it, and in a day or two after she had received the $1000 she went to the home of her brother and her niece, who is now the administratrix, near Rienzi, Mississippi. She placed the $1000 in the bank of Rienzi to her credit, and had gotten the use and benefit of her $1000 after the said separation.

There is no proof that S. L. Springer, the husband, was present when the appellant executed the agreement, or was present when she executed the receipt for the $1000. There is nothing to show that any fraud was practiced upon the appellant or any duress. There is nothing to show that had a legal cause or was justificable in leaving her husband. She never saw him after leaving his home in January, 1924. He lived for nearly six years after the execution of said agreement.

It appears that Aaron Potts died prior to the death of S. L. Springer, and Mr. Williamson who paid the appellant the $1000 died within a month after the death of S. L. Springer. Mrs. Aaron Potts was living, but her deposition was not taken. The appellant stated that she never did ask her husband anything about his property. He had written to her, prior to their marriage, "that he was able to take care of a woman;" this seemed to satisfy appellant and she gave no further thought to what her husband owned.

It appears that both parties, from the time of the execution of the agreement until the filing of the bill in the instant case, complied with the terms of the agreement, which was for more than six years.

This agreement is not invalid as against good morals, neither is it contrary to public policy.

Under the early English common law, separation agreements were illegal as against good morals and contrary to public policy; but in modern times such agreements, when they contemplate a separation in praesenti or the continuance of existing separation are generally upheld by the courts, both in England and America. 9 R. C. L., 524; Note, 82 Am. St. R., 860, 862; Note, 12 L. R. A. (N. S.), 848-853; Keezer on Marriage and Divorce (2 Ed.), sec. 210; Blair v. Blair (Kan.), 186 Pac., 746; Archbell v. Archbell, 158 N. C.,' 408; Anno. Cas., 1913-D, 261.

It was formerly the custom, in making such agreements, for married women to be represented by trustees, but where the common law disabilities of married women have been removed by statute (as in Tennessee), a valid separation agreement may be made without the intervention of a trustee. 9 R. C. L., 527; Winter v. Winter (N. Y.), 16 L. R. A. (N. S.), 710; Keezer on Marriage and Divorce (2 Ed.), sec. 213; Russell v. Russell, 3 Tenn. App., 251.

The record in the case shows that S. L. Springer had from $8,000 to $10,000 on deposit in two banks in Corinth, Mississippi, at the time of the execution of the agreement with his wife, and he had about the same amount at the time of his death. He received no property from his wife.

In the case of Tallman v. Tallman, 166 Iowa, 370, 147 N. W., 746, it was held "that where a husband and wife had lived together only four or five months, and the husband was worth $40,000, a compromise of the wife's claim for separation and maintenance for $1000 was not unreasonable."

In 30 °C. J., 1067, there is laid down the rule that death is a barrier to invoking the aid of the court to set aside a separation agreement; says that learned author, section 849, "where husband and wife are separated under a mutual agreement, and continue to live separate and apart, in conforming with the terms of the agreement, neither one can successfully invoke the aid of the court to set it aside after the death of the other."

In re Lawton's Estate, 266 Penn., 558, 109 Atl., 699, the Supreme Court said of the husband and wife, "They continued to live separate and apart in conformity with the terms of the agreement, they had executed and neither one can successfully invoke the aid of the court to set it aside after the death of the other"—Citing Singer's Estate, 233 Pa., 55, 81 Atl., 898; Anno. Cases, 1913A, 1326.

"After the death of a husband, the fact that he is not present in court to state what influenced him, and what were his views as to his financial security and future health, is a circumstance to be taken into consideration by the court before holding the provisions for the wife to be unjust." Hagg v. Maxwell, 233 Fed., 290.

The appellant having acquiesced in this agreement for more than six years, and having waited until after the death of her husband and having waited until after the death of Aaron Potts and Mr. Williamson, who helped negotiate the settlement between her and her husband. We are of the opinion that the agreement should not be set aside and held invalid. The contract or agreement is not against public policy. And considering there is no fraud or duress proven, we hold under the circumstances the consideration was sufficient to make the contract valid.

It results that the assignments of error are overruled and disallowed. The judgment of the lower court is affirmed. The appellant and her surety on appeal bond will pay the costs of the appeal, for which execution will issue. The costs accrued in the lower court will be paid as adjudged by the Chancellor. The cause will be remanded to the Chancery Court of McNairy County for the purpose of proceeding with the sale for the partition of the lands of S. L. Springer, and the distribution of the proceeds of the sale and all other orders and decrees necessary in this cause.

Heiskell and Senter, JJ., concur.