# Singer's Estate.

*Husband and wife—Agreement of separation—Reconciliation.*

1. Deeds and postnuptial agreements for the actual and immediate separation of husband and wife, based upon a good consideration and reasonable in terms, are valid and effectual both at law and in equity.

2. Where a husband and wife enter into a written agreement to live separate and apart from each other during their natural lives, and in the agreement adjust their respective property rights, but subsequently enter into a second agreement in which they recite the execution of the former agreement, and that the parties have become reconciled and desire to live together, but stipulate that the terms of the former agreement should in no other respect be modified, and thereafter there is no subsequent separation, the husband cannot after the death of his wife demand that he be relieved from the performance of his part of the contract, and claim a share in her estate under the intestate laws.

Argued May 16, 1911. Appeal, No. 125, Jan. T., 1911, by John A. Singer, from decree of O. C. York Co., dismissing exceptions to auditor's report in Estate of Adelaide V. Singer, Deceased. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to report of Allen C. Wiest, Esq., auditor.

BITTENGER, P. J., filed the following opinion:

The following exceptions were filed by John A. Singer, surviving husband of the decedent:

1. The auditor erred in holding "Your auditor, upon the authority of Burkholder's Appeal and Fennel's Estate, holds that John A. Singer is precluded by the above mentioned agreement of January 6, 1902, and of March 24, 1902, from taking any part in his deceased wife's estate, notwithstanding he and his wife became reconciled after

January 6, 1902, and cohabited for a considerable period of time after March 24, of the same year; and therefore he is not entitled to any part of the balance on the account of Richard E. Cochran, executor of the will of Adelaide V. Singer, deceased, as shown by said account or as modified by your auditor; and his claim for five thousand dollars and for one-half of the remainder of said balance, after deducting the costs of audit, is therefore disallowed, and said balance is distributed in accordance with the provisions of the aforesaid will of Adelaide V. Singer."

2. The auditor erred in not awarding to John A. Singer absolutely surviving husband of Adelaide V. Singer, the one-half of the estate of said Adelaide V. Singer remaining after paying debts and legal necessary costs of administration.

3. The auditor erred in not awarding John A. Singer the sum of $5,000 in addition to the one-half of the said estate.

4. The auditor erred in finding "The Act of April 1, 1909, P. L. 87, does not apply to a case where the decedent dies testate and the husband elects to take against the will."

5. The auditor erred in not finding that from 1904 up to February, 1907, John A. Singer and Adelaide V. Singer did not live together as husband and wife.

6. The auditor erred in not finding that from February, 1907, to May 25, 1907, the said John A. Singer and Adelaide V. Singer did live and cohabit together as husband and wife continuously with the exception of one day, at Asheville, N. C., the Hotel Eduard, Philadelphia, and at Clifton Springs, and at the residence of John A. Singer in the city of New York, these facts having been embraced in the admission of facts agreed upon by counsel, and established by uncontradicted evidence.

7. The auditor erred in distributing the balance on the account as provided in the last will and testament of said decedent.

8. The auditor erred upon all the facts admitted agreed

upon and proven in not awarding to John A. Singer one-half of the estate of his deceased wife after deducting the debts and necessary legal expenses out of the estate and the further sum of $5,000 under the act of assembly giving surviving husband the same right in his wife's estate as she could take of his under the intestate law.

Margaret S. H. Porter filed the following exception:

The auditor erred in holding that the failure of John A. Singer to pay to or for his wife anything for her support after May 24, 1907, under the facts found by the auditor "especially showing that she received of him and returned three hundred shares of the capital stock of the Singer Manufacturing Company which yielded a substantial income does not bring him within the provisions of the Act of assembly of May 4, 1855, P. L. 430, and that this Act does not bar his claim to participate in this distribution."

The only exceptions of John A. Singer to the finding of facts by the auditor is the fifth and sixth.

These exceptions cannot be sustained. We find no competent evidence of any agreement to separate at or about the time stated in the fifth exception or that they lived separate and apart during the said time mentioned in the exception. It is true that Mrs. Charlotte Donnelly testifies that she entered into the employment of John A. Singer in superintending his house in the city of New York in October, 1904, and remained in that capacity to serve him in three different houses for seven years, that she saw Mrs. Adelaide V. Singer there only one time, in May, 1907, that she cohabited with her husband from Wednesday to Saturday when she refused, on his request, to remain there with him, and left, and did not return.

It is thus shown that he maintained for seven years a residence and home in New York city from 1904 which was not occupied or visited but for a few days by his wife, but it does not appear from her testimony that John A. Singer was residing in said homes habitually or that the house was regularly occupied by any person or persons

except herself and the servant. On the occasion named, John A. Singer had come there from Clifton Springs, N. Y., where he and his wife had been cohabiting, to which place he stated to Mrs. Singer on her coming, the next day, he intended to return to her on Saturday following.

The maintenance of a residence in the manner stated by the witness, without evidence of the proprietor of the same occupying it regularly and habitually without the presence of his wife at his home does not prove or tend to prove, a living separate and apart from his wife, and especially, when it is shown that at the time or immediately before they were cohabiting at another place and his expression of his intention to return to her at Clifton Springs within a few days. The evidence falls short of even raising an inference that John A. Singer and his wife were living separate during the time named; that they had separated subsequent to March 24, 1902, and that unconditional reconciliation had taken place between them. No error has been found by the court in the auditor's finding of facts covered by this exception, and therefore his findings of facts must be sustained.

All the other exceptions filed by John A. Singer are to the conclusions of law and its application by the auditor.

From the admissions filed and the evidence in the case, the auditor has found the following facts:

It has thus been established and your auditor finds that:

John A. Singer and the testatrix were married on June 11, 1885. In July, 1901, Mr. Singer, at the urgent demand of his wife, transferred and delivered to her absolutely 125 shares of the capital stock of the Singer Manufacturing Company, worth $30,250, subject to the payment of the debt of Mr. Singer of $16,500, for which the stock had been pledged, and 275 shares of the same stock worth $66,550, upon the oral stipulation that she shall receive the dividends on said 275 shares of stock during her lifetime, and if she survived her husband the same shall become hers absolutely, but in case of her decease

before the death of her husband said 275 shares of stock "shall revert" to him.

On December 31, 1901, John A. Singer filed in the court of common pleas of York county, Pennsylvania, a bill in equity against his wife, the above mentioned testatrix, in which he averred among other things, the transfer of the aforesaid 275 shares of the capital stock of the Singer Manufacturing Company to his wife, upon the aforesaid stipulation in relation thereto, and that he had reason to believe that she intends to wrongfully transfer said stock in violation of said stipulation, and prayed the court for an injunction restraining her from selling said stock, and for a decree requiring her to give security for the faithful performance of her duty in relation to the trust growing out of the transfer of said 275 shares of stock to her as aforesaid. On the same day a preliminary injunction was granted in accordance with the prayer in the plaintiff's bill.

On January 6, 1902, Mr. Singer and his wife entered into a written agreement which was duly acknowledged by them and entered of record in the office of the recorder of deeds of said county on March 8, 1902, in which they recite the pending of the above mentioned bill in equity and the intention of Mr. Singer to institute other proceedings against her; that "divers disputes and unhappy differences have arisen between" them "for which reason they have consented and agreed to live separate and apart from each other during their natural lives," and that "after due consideration and full and separate consultation with their respective legal counsel and advisers" they "have agreed upon the adjustment of their respective claims, rights, equities, trusts and reversions in and to all property, real, personal or mixed, now in the possession of or standing in the name of or to the use of them or either of them."

The agreement stipulates among other things, in the usual form, that they shall live separate and apart from each other, and that neither shall interfere with the other;

that Mr. Singer shall in no measure be liable for his wife's support; and that Mrs. Singer shall surrender to Mr. Singer his promissory note for $2,000 payable to Mrs. Singer, and his two promissory notes, one for $1,000 and one for $400, payable to Anna M. Small. By this same agreement Mrs. Singer transferred to her husband her interest in two life insurance policies, issued by The New York Life Insurance Company, upon her husband's life, each for $25,000 in which she was beneficiary, also one hundred shares of the capital stock of the Singer Manufacturing Company; Mr. Singer relinquished all claims to all other property in her possession including the remainder of said stock and their dwelling house which he had previously conveyed to her. Mr. Singer also released, acquitted and discharged his wife "her representatives, heirs and assigns, from all and every claim, demand, suit, action, or accounting for or on account of any matter or thing either during her lifetime or after her death," and released and surrendered "all right, title and interest as husband, tenant by the curtesy or otherwise howsoever, in any property, real or personal, which she now has or may be in any wise entitled to, or may hereafter acquire, to the end that she may acquire, possess, enjoy, convey, devise and bequeath the same with the same effect as if she were a feme sole;" and Mrs. Singer as fully released her husband and his estate of all claim and demands during his lifetime and of all that she might have as his surviving widow. The above mentioned insurance policies and one hundred shares of stock and notes, were duly delivered to Mr. Singer in accordance with the terms of said agreement. Upon the execution of this agreement on January 6, 1902, Mr. and Mrs. Singer separated and continued to live separate and apart until March 24, 1902.

On January 14, 1902, after leave granted by the court, on motion of counsel for plaintiff and defendant, the above mentioned suit in equity was withdrawn, and the preliminary injunction issued upon said bill was dissolved.

On March 24, 1902, Mr. Singer and his wife entered

into another written agreement which was duly acknowl-
edged by them and entered of record in said recorder's
office on November 18, 1902, in which they recite among
other things the execution of the above mentioned agree-
ment of January 6, 1902; that said agreement "provided
that the said parties thereto should thereafter live separate
and apart from one another as part of the consideration
of said agreement," and that "said parties hereto have
now become reconciled and desire to again live together
as husband and wife, but in no other respect to modify
any of the terms of said agreement." By this agreement
Mrs. Singer agreed "to resume the family relations" with
her husband. The agreement contains various stipulations
relative to the conduct of the household affairs and the
behavior of the parties toward one another. It provides
that each shall pay one-half "of the domestic household
expenses" and that Mrs. Singer shall pay her own per-
sonal expenses, including wearing apparel. It also con-
tains these two paragraphs, which refer to the above men-
tioned agreement of January 6, 1902:

"The said parties hereto do hereby republish, ratify and
confirm all of the various stipulations and agreement
contained in said contract of January 6, A. D. 1902, ex-
cept the stipulation that the said parties shall live separate
and apart.

"And it is hereby further expressly agreed and under-
stood by and between the parties hereto that in case they
shall fail to agree and shall again separate that this agree-
ment and all its provisions shall immediately become null
and void and that the said contract of January 6, 1902,
shall be in all respects revived and reinstated as fully and
completely as if this contract had never been made or
entered into."

Subsequently Mr. and Mrs. Singer cohabited together
for at least part of the time until May 24, 1907. The
admitted facts are that they cohabited at intervals, but
there is nothing before the auditor to show that they did
not also cohabit between these intervals.

Mr. Singer maintained a residence in New York city between October, 1904, and May 25, 1907. During this time Mrs. Charlotte Donnelly lived with him at his New York residence, "superintending his house." About May 22, 1907, in addition to Mrs. Donnelly, "a maid" was also in this residence. Mrs. Singer in this time visited this residence of Mr. Singer but once for a period of four days. During part of this time Mr. and Mrs. Singer cohabited at intervals at different hotels and at a sanitarium. He paid the bills for both, but in a number of cases she refunded to him one-half of the charges for room and board and other common expenses and all of her personal expenses.

About May 18, 1907, after they had been cohabiting at Clifton Springs, New York, for about eighteen days, Mr. Singer went to his above mentioned New York residence. Mrs. Singer followed him a day later, arriving at his residence on May 21, or May 22. She remained there until May 25, during which time she occupied the same room and bed with her husband. She left on May 25, after Mr. Singer requested her to stay and had offered to go with her wherever she wished to go, if she did not like it at his residence. About fifteen minutes before she left she said, "she would not live with him." After this they never cohabited, and "from and after this date Mr. Singer never made any payments of money to her, or for her account."

Mrs. Singer died on July 19, 1910, without surviving issue. Her above mentioned will was duly probated.

A very complete brief of authorities has been submitted by the learned counsel of John A. Singer in which a multitude of English decisions and decisions of other states are cited to establish the contention of this exceptant, that the agreement in evidence of January 6, 1902, was completely abrogated by the reconciliation of the parties and their resumption of the marriage relation.

The law is to the effect that a subsequent resumption of the marital relations by the parties to a separation agree-

ment in the several jurisdictions terminates the articles of separation, but in one of the cases, Smith v. King, 107 N. C. 273 (12 S. E. Repr. 57), cited by the exceptant, it is said on page 276, "when she" (the wife) "returned to his roof, cohabited with him, and is supported by him, this annuls all agreements for a separation and for the support rendered necessary thereby. The law, if it recognizes, does not favor articles of separation, and will not construe them as to be valid after the parties have themselves cancelled the agreement to separate, by cohabiting together, unless it appears by the deed, plainly, that such separate support is to be continued notwithstanding any future reconciliation and cohabitation."

In the case under consideration, the estate for distribution was created by John A. Singer in his wife, by the transfer to her of the stock mentioned in the agreement unequivocally providing that he would not interfere with his wife's estate before or after her death, by claiming any part of the same. At the time of the second agreement of March 24, 1902, it was positively declared and agreed in the reconciliation of the parties that the terms and conditions upon which they resumed the relation of husband and wife were that their intention in such resumption of the marriage relation was "not to modify any of the terms of the agreement of January 6, 1902, excepting those which provided that they shall live together; and expressly republished, ratified and confirmed "all the various stipulations and agreements contained in said contract of January 6, A. D. 1902, except the stipulation that the said parties shall live separate and apart."

This agreement was mutually binding on the parties. The wife had full power to contract under the Pennsylvania acts of assembly, notably the act entitled "An Act relating to husband and wife enlarging their capacity to acquire and dispose of property, to sue and be sued and to make a last will, etc.," approved June 8, 1893, P. L. 344.

As we have seen, there is no evidence to establish sepa-

ration between John A. Singer and his wife, after March 24, 1902, and a subsequent reconciliation without conditions, as contended by exceptant's counsel. No separation after said period being proven, there could not be a subsequent unconditional reconciliation.

The terms of the original agreement of separation as it was reaffirmed by the parties in their agreement of March 24, 1902, therefore continued, at the death of the decedent, Adelaide V. Singer. Even if the subsequent separation in December, 1904, and the unconditional reconciliation as contended for by exceptant's counsel were proven, in the absence of proof to the contrary, the law would have presumed such reconciliation to have been upon the terms of their previous written agreements.

The case of Burkholder's App., 105 Pa. 31, decides: "A postnuptial contract, the main object of which was the settlement of differences between husband and wife which had caused a temporary separation, is founded upon sufficient consideration; and after it has been fully executed by husband and wife during their lives, a provision therein in favor of the wife's issue by a former marriage, contingent upon the husband surviving his wife, and dying, will, after the happening of said contingency, be enforced in the settlement of the husband's estate in the orphans' court."

The auditor decided against the claim of the exceptant upon the authority of the last cited case and Fennell's Est., 207 Pa. 309, with other cases, which in our opinion on the facts admitted and the evidence, and found by the auditor, is clearly right and his decision must be sustained.

We have had no case cited to us like this, where the husband has created an estate in his wife, and executed separation papers in which he absolutely releases all property rights in his wife's estate during her life or after her death, where a like reconciliation took place under an agreement providing that the original separation agreement should remain stable in its provisions, as to property

rights defined therein, where after the death of the wife the husband claimed against her will and was allowed to recover any share out of her estate, where the powers and liabilities of the parties to the contract are defined, as existing by law as in this commonwealth.

We are of the opinion that the auditor's finding of both law and fact are correct for the reasons stated in his report, and that his report should be confirmed.

We need not consider the exception filed by Margaret S. H. Porter.

The exceptions are dismissed at the cost of the exceptant, John A. Singer, and the report is confirmed.

*Errors assigned* were in dismissing exceptions to auditor's report.

*W. F. Bay Stewart,* with him *W. R. Beach, Edward Chapin* and *Frederick B. Gerber,* for appellant.—The reconciliation, the fact of which cannot be ignored or explained away wholly, did away with the separation agreement of January 6, 1902; and the attempted revival and reinstatement thereof, by the clauses to that effect, must fail: Westmeath v. Westmeath, Jacob R. 126; Durant v. Titley, 7 Price, 577; Hindley v. Westmeath, 6 Barn. & Cress. 200; O'Malley v. Blease, 20 Law Times (N. S.), 899; Nicol v. Nicol, L. R. 31 Ch. Div. 524; Zimmer v. Settle, 124 N. Y. 37 (26 N. E. Repr. 341); Knapp v. Knapp, 95 Mich. 474 (55 N. W. Repr. 353); Kehr v. Smith, 87 U. S. 31; Shelthar v. Gregory, 2 Wend. 422; Garland v. Garland, 50 Miss. 694; Roberts v. Hardy, 89 Mo. App. 86; Smith v. King, 107 N. C. 273 (12 S. E. Repr. 57); Galusha v. Galusha, 116 N. Y. 635 (22 N. E. Repr. 1114); Winter v. Winter, 191 N. Y. 462 (84 N. E. Repr. 382).

The separation agreement of January 6, 1902, being rescinded and annulled by the subsequent reconciliation and cohabitation of the parties, was so rescinded and annulled in all its parts and provisions: O'Malley v. Blease,

20 Law Times (N. S.), 899; Nicol v. Nicol, L. R. 31 Ch. Div. 524.

It has been uniformly held that reconciliation and cohabitation as husband and wife abrogate all provisions of a separation agreement, and the parties thereto thereafter stand in precisely the position relative to each other's property that they occupied prior to the separation agreement: O'Malley v. Blease, 20 Law Times (N. S.), 899; Scholey v. Goodman, 1 Car. & P. 36; Nicol v. Nicol, L. R. 31 Ch. Div. 524; Knapp v. Knapp, 95 Mich. 474 (55 N. W. Repr. 353); Kehr v. Smith, 87 U. S. 31; Wells v. Stout, 9 Cal. 479; Winter v. Winter, 191 N. Y. 462 (84 N. E. Repr. 382).

*Richard E. Cochran*, with him *Smyser Williams*, for appellee.—Whatever misgivings Lord Eldon and the other English jurists may have had as to the public policy of agreements of separation between husband and wife, the courts of Pennsylvania have recognized and enforced them in: Dillinger's App., 35 Pa. 357; Hitner's App., 54 Pa. 110; Com. v. Richards, 131 Pa. 209; Scott's Est., 147 Pa. 102; Fennell's Est., 207 Pa. 309.

This case is ruled by Burkholder's App., 105 Pa. 31.

OPINION BY MR. JUSTICE MESTREZAT, July 6, 1911:

In an elaborate report, the auditor found the facts and stated his conclusions of law. The learned court approved the findings of fact and sustained the conclusions of law in an opinion which correctly disposes of the questions raised on this appeal. The appellant has failed to convince us of error in the findings of fact or of law, and hence the decree must be affirmed.

Owing to "divers disputes and unhappy differences having arisen between" John A. Singer and his wife, Adelaide V. Singer, they entered into the agreement of January 6, 1902, by which they "agreed to live separate and apart from each other during their natural lives," and "agreed upon the adjustment of their respective claims,

rights, equities, trusts and reversions in and to all property, real, personal or mixed, now in the possession of or standing in the name of or to the use of them or either of them." Having executed the agreement, the parties separated, and lived apart until March 24, 1902, when they entered into another agreement in which they recite the execution of the former agreement, and that the parties had become reconciled and desire to again live together as husband and wife, "but in no other respect to modify any of the terms of the said (former) agreement." The later agreement republished, ratified and confirmed all of the several stipulations contained in the contract of January 6, 1902, except the stipulation that the parties "shall live separate and apart." The parties again resumed their marital relations. The appellant, who is the husband, contends that the parties separated again in 1904 and did not live together as husband and wife from that time until May, 1907, and requested the auditor and the court to so find. The request was declined, and it was held that there was no competent evidence of any agreement to separate in 1904, or that the parties lived separate and apart from that date until 1907. The learned court says: "As we have seen, there is no evidence to establish separation between John A. Singer and his wife after March 24, 1902, and a subsequent reconciliation without conditions, as contended by exceptant's counsel. No separation after said period being proven, there could not be a subsequent unconditional reconciliation. The terms of the original agreement of separation as it was reaffirmed by the parties in their agreement of March 24, 1902, therefore, continued at the death of the decedent, Adelaide V. Singer." Regarding this as an established fact, the contract of March 24, 1902, must be sustained and enforced.

Deeds and postnuptial agreements for the actual and immediate separation of husband and wife, based upon a good consideration and reasonable in terms, are valid and effectual both at law and in equity in this state. They

may be legally entered into by the parties without the intervention of a trustee: Com. v. Richards, 131 Pa. 209. It must be conceded that the separation agreement of January, 1902, was valid and that its several covenants were binding on the parties. Had Mr. and Mrs. Singer continued to live separate and apart in conformity with its stipulations, neither could have successfully invoked the assistance of the court to annul or set it aside after the death of the other party. It is equally true and is the settled law of the state that a subsequent reconciliation and resumption of marital duties by the parties, not affected by any agreement, would abrogate or invalidate the contract of separation made in January, 1902: Hitner's App., 54 Pa. 110. So much was conceded by the auditor and the court below. But the reconciliation of March 24, 1902, was in pursuance of the agreement of that date which set forth the terms on which the parties were to resume their relations as husband and wife and, as we have seen, republished, ratified and confirmed all the stipulations in the contract of January 6, 1902, except the stipulation that the parties should live apart. Save in this one particular, the separation agreement of January, 1902, was the reconciliation agreement of March, 1902. The earlier agreement drops out of the case as effectively as if the stipulations therein had been inserted in terms in the later agreement. The rights of the parties depend entirely upon the last agreement which they unquestionably had authority to make: Fennell's Est., 207 Pa. 309. It was not a deed of separation but of reconciliation, defining the rights of each in the property of the other. The "divers disputes and unhappy differences" which had existed between the husband and wife and which had caused their separation three months prior thereto were satisfactorily adjusted, and thereafter the marital relations of the parties were resumed under the March agreement. Under the findings of fact, there was no subsequent separation and reconciliation between the parties. The March contract was fully executed on the part of Mrs. Singer.

She gave and did all she agreed to give and do. Her covenants were sacredly kept, and after her death, it is too late for her husband to demand that he be relieved from the performance of his part of the contract. Equity will not permit him to retain the "claims, rights, equities, trusts and reversions in and to all her property" which she gave him, and after the contract had been fully executed by her and she is dead, allow him to rescind the agreement and, in violation of its stipulations, participate in the distribution of her estate. Equity neither sanctions nor enforces a fraud. The parties having the power to enter into the contract of March, 1902, and no fraud, overreaching or unfairness being alleged, and the wife having fully complied with her covenants, equity will compel the husband to observe his part of the agreement.

We agree with the auditor and orphans' court that the case is ruled by Burkholder's App., 105 Pa. 31, and Fennell's Est., 207 Pa. 309, and the court having exhaustively reviewed the facts and law in its opinion, we regard any further discussion of the case as unnecessary.

Decree affirmed.