# Yeary v. Yeary.

(Decided March 28, 1930.)

E. H. JOHNSON for appellant.

C. B. SPICER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Mrs. Yeary sued her husband for divorce, and asked for $18,000 alimony; the court dismissed her petition, and granted a divorce upon her husband's answer and cross-action. She appeals.

These parties married August 30, 1916. He was then twenty-three and she was twenty. They have had an unhappy married life. It appears Mrs. Yeary was given to jealousy, a matter we discussed in Sales v. Sales, 222 Ky. 175, 300 S. W. 354. This trait of hers has had its never failing result. Neither she nor her husband now has any affection for the other. This weakness on her part rendered her an easy victim for any seducer who would pander to it, and, as we shall see later, he appeared.

Mrs. Yeary required her husband to turn over to her his salary check, and he said he had to do that to avoid a furse. He insisted on her saving some of this money, but she was in bad health, she thought she would not live long, and said she did not want to save up money for some other woman.

Her husband's thirteen year old sister, on August 17, 1928, came to pay a visit to her brother. This proposed visit started a real furse. Mrs. Yeary prepared for hostilities by arming herself with an ice pick, with which she endeavored to strike her husband. He struck her with his overall jacket, a fight followed, and she left. Four days thereafter she sued her husband for divorce and alimony upon the grounds of cruel and inhuman treatment. He countered by asking for a divorce upon grounds of such lewd and lascivious conduct upon her part as proved her to be unchaste. He took his proof first, and soon had Mrs. Yeary upon the defensive. Her only proof of cruelty comes from herself, and this her husband emphatically denies. The evidence for the husband shows such relations and conduct of Mrs. Yeary with one O. M. Howard as to support the husband's charge against her. Of course, both she and Howard

deny that, but there was so much proof of automobile rides by these two, meetings at suspicious places, petting, embracing, and presence together alone in the Yeary home, at hotels, etc., as to support the finding of the chancellor.

Mrs. Yeary sought to break the effect of the testimony of some of these witnesses by showing their reputation was bad, but the husband called witnesses to show it was good. She asks the court to disbelieve the evidence of other witnesses because they were either railroad men or the wives of railroad men, and by showing they belonged to the same railroad brotherhoods with the husband, who was a railroad man. Eleven of Mr. Yeary's witnesses were in some way connected with the railroad, but that was also true of five of her witnesses. There is nothing strange in this, for Mr. Yeary and his wife were railroad people, and it is to be expected that their friends and acquaintances would be railroad people. Her paramour was also a railroad man. Other witnesses she attacks because they were accustomed to join Mr. Yeary on fox chases, but, under the circumstances, if Yeary chased nothing worse than foxes, he did pretty well. There was much evidence of letters passing between Mrs. Yeary and Howard, and evidence that one was rather erotic. Mrs. Yeary denies writing such, but here is a postal card she admits receiving from Howard, while he was at Hot Springs.

"7/18/28.

"Dear Bud: Sure am lonesome, got my first bath this morning, lost 4 pounds first bath, how is that? Feeling some better this eve. Ten thousand to see you. Sure do."

"Signed     May."

There is also a post office registry receipt for a letter charged to have been sent by Mrs. Yeary to O. M. Howard at Hot Springs, and she does not deny it, though she was afterwards on the stand. Howard had testified for her, but he was not recalled to deny this. It was to Howard that Mrs. Yeary telephoned and asked him to come and get her after she and her husband had their fight.

The strongest evidence for Mrs. Yeary is that some years ago she underwent a serious operation, the wound of which has never healed and is still discharging, and

it does seem unreasonable that a woman so afflicted would be guilty of the irregularities charged against her, but we must remember we are dealing with the strongest appetite in the human body, for the gratification of which more foolish things have been done and greater risks taken than all other appetites combined.

It is faintly suggested Mr. Yeary cannot rely on these proven irregularities in the life of Mrs. Yeary because he knew not of them before their separation, but such makes his case all the stronger. If he had known of them, he might be said to have condoned them.

There is some evidence of how much Mrs. Yeary is thought of by some people and how well she is regarded. That only helps to sustain her own testimony; that is not enough to disprove her proven guilt. She is not charged with promiscuous unchastity, but there is no such creature as a tolerably chaste woman or a wife of reasonable fidelity. Chastity does not admit of gradation. It is a virtue which a woman either has or she has not, and, as regards Mrs. Yeary, the finding is adverse.

The judgment is affirmed. The plaintiff took depositions of twenty-four witnesses, the defendant eighteen. The clerk contents himself by merely saying in his index "Depositions for plaintiff" and "Depositions for defendant." For failure to properly index this record, $10 shall be deducted from his fees, and, if he has been paid, he shall refund that amount. See Com. v. Campbell, 231 Ky. 386, 21 S. W. (2d) 474.