## MacGregor v. MacGregor.

(Decided June 20, 1930.)

LAWRENCE S. LEOPOLD for appellant.

SHACKELFORD MILLER, Jr., and NEVILLE MILLER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

In an action for alimony, etc., begun by Mrs. Belle L. MacGregor against her husband, Dr. Warren L. MacGregor, she was allowed $425 per month until further order of the court, her counsel were allowed $1,500 attorneys' fees, and Dr. MacGregor appeals.

These parties were married November 30, 1917. Mrs. MacGregor was then 20 years of age and Dr. MacGregor, 24 or 25.

Dr. MacGregor has been successful in his profession. He has acquired about $40,000 worth of real estate, all of which he has had put in his wife's name. The doctor owes some money, but he has apparently just about enough personal property to pay that. His net income is not clearly established, but is probably about $12,000 per year.

About the first of the year 1929, the doctor left home and went to a hotel to live. His excuse is that he was forced to do so by his wife's jealousy and nagging. We described jealousy as well as we could in Sales v. Sales, 222 Ky. 175, 300 S. W. 354, and we will just adopt what was said about nagging by the Supreme Court of Georgia in Wilkinson v. Wilkinson, 159 Ga. 332, 125 S. E. 856, 859:

"From the days of Socrates and Xantippe, men and women have known what is meant by nagging, although philology cannot define it or legal chemistry resolve it into its elements. Humor cannot soften or wit divert it. Prayers avail nothing, and threats are idle. Soft words but increase its velocity, and harsh ones its violence. Darkness has for it no terrors, and the long hours of the night draw no drap-

ery of the couch around it. The chamber where love and peace should dwell becomes an inferno, driving the poor man to the saloon, the rich one to the club, and both to the arms of the harlot. It takes the sparkle out of the wine of life and turns at night into ashes the fruits of the labor of the day."

He might have added the words of Solomon that:

"It is better to dwell in the corner of the house-top, than with a brawling woman in the wide house." Proverbs 25:24.

Mrs. MacGregor undertook to show the doctor left home because he was enamoured of another woman, but she failed utterly. Her account of why the doctor left would have been more reasonable if this young woman were still single and living in Louisville, but with her married and gone to a distant city long before this separation, it is preposterous to say she caused him to leave.

In her petition she says:

"Plaintiff states that without like or any fault on her part, the defendant has habitually behaved towards her for a period not less than six months in such a cruel and inhuman manner as to indicate a settled aversion to her and destroy permanently her peace and happiness."

She failed to establish any cruelty on his part. It is apparent, however, her husband has no affection for her, but upon that score the honors are about even. She has none for him. Such is ever the sure fruition of inordinate jealousy. See Yeary v. Yeary, 233 Ky. 691, 26 S. W. (2d) 536.

It is evident her peace and happiness had been destroyed, but the same is true of the peace and happiness of the doctor. From time immemorial philosophers have debated whether the greater happiness is derived from loving or being loved, but both of these sources of felicity are now unknown to both these unfortunate people, their mutual love is dead, and the deadest of all dead things is dead love. Probably both of these people made some contribution to the death of their love. Certainly the doctor helped matters none by leaving home, but he had much to cause him to do so. His wife had

then for almost a year had him under espionage, and no man, that is a man, is willing so to live. What caused all this we do not positively know, but it was probably caused by Mrs. MacGregor's jealousy and nagging.

Something happened which jarred her imagination and put it to work, and it has done the rest. She has kept the doctor under espionage, not only by herself, her sister and her friends, equipped with notebooks and recording therein the movements of the doctor for nearly a year before he left, but she has employed professional detectives to shadow him, and out of all this the doctor's life to her appears as a perfect fantasmagoria of vice and depravity. Yet there is no evidence this espionage has resulted in the espial of anything of which the doctor need be ashamed.

There is no complaint of the judgment except the size of the monthly allowance and the attorneys' fee.

When Mrs. MacGregor married the doctor she deliberately chose domesticity as her career, there is no more honorable one, and the woman who makes a good wife has achieved great success and deserves as much honor and reward as a grand-opera star, but it is just as much a disgrace and shame to fail to make a good wife, as to be hissed off the stage. Mrs. MacGregor has made a failure, yet with a $28,000 home in which to live, with $5,000 worth of furniture for her use and enjoyment, without a chick or child dependent on her; and without a charge or a care to give her anxiety, she was allowed by this judgment more than $5,000 per year.

Mrs. MacGregor's attorneys have taken a great deal of unnecessary and immaterial evidence, as a result of which this record is about three times as large as it should be. All of this was taken without the attorneys ever having to leave the city. Mrs. MacGregor is charged with no moral delinquency, she is still the doctor's wife, though in name only and while this status continues he must support her, but the allowances made were too large. The monthly allowance to Mrs. MacGregor is now reduced from $425 to $300, and the allowance to her attorneys is reduced from $1,500 to $1,000.

The judgment is reversed.