## Ray v. Ray's Executrix et al.

(Decided May 23, 1933.)

348

J. D. HARDIN and J. E. WISE for appellant.
LAYMAN & LAYMAN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in part and reversing in part.

By contract dated July 22, 1915, and acknowledged and recorded on September 21, 1915, Elias R. Ray released all claim to all personal and real estate then owned or thereafter acquired by Mrs. Emma Berry, who was to become his wife, and Mrs. Berry released all claim she might lawfully have by becoming the wife of Elias Ray to all the personalty and realty then owned by him. Several years later E. R. Ray sued his wife, Emma E. Ray, for divorce and she counterclaimed for alimony. While the suit was pending they entered into a written agreement dated March 18, 1931, stating that all claims had been adjusted and that each acknowledged from the other satisfaction of every character of claim whatsoever. The agreement further provided that defendant's claim for alimony and maintenance should be dismissed, and recited that it was made in contemplation of separation which was to be permanent, and covered all property rights which either might have in the property of the other. As consideration for this contract, Mrs. Ray obtained the surrender and cancellation of a note which she owed her husband, and also a $40 note which her son had executed to her husband. On December 1, 1931, Ray and wife, desiring to live together, entered into a further agreement continuing in force the contract of March 18, 1931, and stipulating that each relinquished all claims he or she had to the property of the other by reason of the marital relation.

E. R. Ray died in the year 1932, leaving a will by which he bequeathed $1 to his wife, Emma Ray, and the remainder to his children. Emma Ray renounced the will in writing and elected to take dower and her distributable share of her husband's estate.

Agnes G. Grimes, who was nominated and qualified as executrix of the will, together with the other devisees, brought this suit against the widow, Emma E. Ray, for the purpose of having the rights of the heirs and the widow under the contracts and will determined. In her answer the widow denied that the contract was executed on July 22, 1915, and alleged that it was executed several weeks after their marriage. She also alleged that the other two contracts were void. On completion of the issues the parties announced ready for trial and the court adjudged that the burden of proof was on the widow. The widow offered as a witness one of her attorneys who testified in substance, over the objection of plaintiffs, that after the marriage the decedent and his wife discussed with him the making of a marriage contract. This evidence was afterwards excluded by the court, and judgment was rendered upholding the antenuptial contract of July 22, 1915, declaring the two subsequent contracts invalid, and adjudging that plaintiff recover of the defendant the sum of $278, the amount of her note surrendered to her and canceled by the agreement, with interest from date, and that she restore to the executrix the $40 note which E. R. Ray held against her son, and which was surrendered to her by reason of the contract. From that judgment the widow appeals.

It is first insisted that the court erred in placing the burden of proof on appellant. Without attempting to announce any general rule as to the burden of proof in cases of this kind, it must not be overlooked that by the antenuptial contract in question each of the parties released all claim to the property of the other, and there was no showing whatever that appellant had no property at the time the contract was signed. That being true, the case is ruled by Early v. Early, 182 Ky. 757, 207 S. W. 466, 467, wherein the court said:

"But it is insisted that the court erred in denying the defendants the burden of proof. Since it is admitted that the husband had property, there might

be some merit in this contention, if by the contract in question plaintiff had released all her interest in her husband's estate, and there was no corresponding obligation on the part of the husband. Pierce v. Pierce, 71 N. Y. 154, 27 Am. Rep. 22; Tilton v. Tilton, 130 Ky. 281, 113 S. W. 134, 132 Am. St. Rep. 359. But where, as in this case, the agreement consists of mutual relinquishments of interests in each other's estates, and the contract does not show, and the pleadings do not admit, that plaintiff had no property, there is no basis for any presumption against the validity of the contract, since, in the absence of such a showing, the contract may have been to the advantage of the wife. The burden on the whole case was therefore on plaintiff, but when she testified that she had no property the burden then shifted to the defendants, and it was incumbent upon them to show the fairness of the transaction. It follows that the court did not err in placing the burden of proof upon plaintiff.''

It follows that the court did not err in placing the burden of proof on the widow.

It is next insisted that the court erred in holding that the antenuptial contract was executed on July 22, 1915, instead of after the parties were married. The principal ground for this contention is that the contract was acknowledged before the county clerk on September 21, 1915, and that the date of acknowledgment is controlling. It is true that the date of a deed is the date of its acknowledgment, Northern Coal & Coke Co. v. Bates, 146 Ky. 624, 143 S. W. 13, but there is no reason for applying the same rule to an antenuptial contract like the one in question. Neither party conveyed any title to or interest in land to the other. They merely released their prospective claims to each other's real and personal estate, and there is no law requiring that such contracts shall be acknowledged, and that they shall take effect from the date of the acknowledgment.

The court did not err in excluding the evidence of appellant's attorney. He admitted on his cross-examination that he had a contract with appellant by which he was to receive a contingent fee in the event of a recovery. As his testimony concerned verbal statements of, and transactions with, Mr. Ray, who was dead at

the time, and he was pecuniarily interested in the result of the suit, it cannot be doubted that he was testifying for himself, and was therefore incompetent as a witness under subsection 2, sec. 606, Civil Code of Practice. Apperson's Ex'x v. Exchange Bank of Kentucky, 10 S. W. 801, 10 Ky. Law Rep. 943.

There being no evidence to the contrary, the presumption is that the contract was executed on the day of its date, Kauffman v. Baillie, 46 Wash. 248, 89 P. 548, and this presumption is re-enforced by the fact that appellant signed the name she bore before her marriage. In view of these circumstances the court did not err in holding that the contract was executed prior to the marriage of the parties.

The original antenuptial contract by which each of the parties released all claims to the property of the other being valid, it is unnecessary to determine the validity of similar provisions in the contracts of March 18 and December 1, 1931. However, these contracts become material in view of that part of the judgment awarding a recovery against the widow for $278, the amount of her note which her husband had surrendered to her, and requiring her to surrender the $40 note which her son had executed to her husband. The basis of this ruling is that the surrender of the two notes was the consideration of the separation agreement, and that this agreement was avoided by the subsequent reconciliation of the parties and the resumption of the marital relation. It may be conceded that subsequent reconciliation and cohabitation put an end to deeds of separation between husband and wife, so far as they provide for living apart and to provisions in them of an executory nature by which the husband undertakes to furnish separate maintenance for the wife, Hendricks v. Hendricks, 4 Ky. Law Rep. 724; but this rule does not always apply to the executed parts of the agreement. Whether executed agreements are so far avoided as to require a return of the consideration depends on the intention of the parties. Dennis v. Perkins, 88 Kan. 428, 129 P. 165, 43 L. R. A. (N. S.) 1219; 9 R. C. L. 535. The reconciliation agreement of December 1, 1931, reads in part as follows:

"That whereas the parties hereto on March 18th, 1931, in contemplation of separation and living

apart made and entered into an agreement whereby they settled their respective property rights and a division of property was made pursuant thereto and whereas the parties hereto now desire to live together but desire that the former agreement above referred to shall remain in full force and effect and each party hereto shall retain the property such one received and held under such agreement free from any interest of control of the other now in consideration of the above consideration and good and valuable consideration received by each of the parties hereto from the other it is now agreed that said division and separation or property shall remain permanent, etc."

This contract leaves nothing for construction. It shows that in resuming their marital relations the parties clearly intended that each should retain the property he or she had received under the separation agreement of March 18, 1931, and that said division and separation of the property should remain permanent. In the circumstances the reconciliation of the parties, and the resumption of the marital relation, did not avoid the separation agreement, and it was error to adjudge a restoration of the consideration which was actually paid at the time the separation agreement was executed. In re Singer's Estate, 233 Pa. 55, 81 A. 898, Ann. Cas. 1913A, 1326.

Wherefore, that part of the judgment upholding the antenuptial contract of July 22, 1915, is affirmed; and that part of the judgment adjudging that the executrix recover of appellant the sum of $278 with interest, and requiring appellant to surrender the $40 note of her son, is reversed, and cause remanded for proceedings consistent with this opinion.