## Ezell v. Ezell.

(Decided Oct. 18, 1935.)

BEN S. ADAMS for appellant.

L. B. ALEXANDER and JACK E. FISHER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing in part and affirming in part.

W. N. Ezell was born June 10, 1884, Daisy Ezell April 21, 1898; August 25, 1916, they were married; May 8, 1933, he left her; and May 10, 1933, she began this suit, which resulted in a divorce and an allowance to her of $4,000 alimony and $350 attorney's fees. She has appealed, and is asking for an increase in these allowances, and he, realizing the judgment of divorce is not appealable, still questions her grounds of divorce and has prosecuted a cross-appeal and is asking for a reduction of the allowances made her.

### The Grounds of Divorce.

Mrs. Ezell charged her husband with cruel and inhuman treatment. The proof shows Mr. Ezell was given to jealousy, of which we said something in Sales v. Sales, 222 Ky. 175, 300 S. W. 354, and to nagging, which we tried to describe in MacGregor v. MacGregor, 235 Ky. 498, 31 S. W. (2d) 889, and these traits of her hus-

band, like a millstone about her neck, sank his wife in a sea of misery. There is no evidence Mr. Ezell ever struck his wife, but cruelty does not have to be physical. McClintock v. McClintock, 171 Ky. 409, 144 S. W. 68, 39 L. R. A. (N. S.) 1127. The constant dingdong of the ugly charges he made, day in and day out, month in and month out, year in and year out, and compelling her to live under constant espionage, were enough to drive her mad, and the court did not err in granting her a divorce.

### Their Property.

When these parties were married they had nothing, but both were energetic, both worked like beavers, and, by scrimping and scraping, have got together what they have. They have no children, and, if they could have got along, they had a fair start for a life of ease. Mrs. Ezell worked in a store by day and did her housework at night. In January, 1926, Mr. Ezell became tax commissioner, and his wife was sworn in as his deputy, and the evidence shows she worked in the office a part of the time and they worked together on the books at night. W. N. Ezell now claims all of the property that has been accumulated by the efforts of these two. The trial court treated it as all his, which was perhaps wise, for these two are now in a poor frame of mind to own property jointly.

How much this property is worth is rendered difficult of determination because of refusal of W. N. Ezell to answer questions propounded to him. Such refusals and his evasive answers are not calculated to induce any one to place a 100 per cent. credibility upon what he says.

When his deposition was taken as if on cross-examination on January 10, 1934, and when he felt sure of success in this suit, he stated he was worth on the day of separation $14,000.

When he testified 57 days later after the proof for his wife had been taken and he had perhaps become uneasy about the result of this suit, he placed the worth of this property at $9,915. Just how he arrives at this last figure is not very clear. The farm which he had valued at $2,500, he valued at $1,800 only 57 days later. In like manner he reduced the value of the home from $3,000 to $2,500, the vacant lot from $1,000 to $250. He admitted he had received as pay for his official services

in 1933, $2,400. He said he then had bona fide intangibles which he valued at $3,616, and other intangibles: face value of which was $2,802, which he valued at $648, and an automobile which he valued at $300, and household furniture which he valued at $800.

These total $12,314 at his last figures, and we see no account of the $4,000 approximately which he had withdrawn from banks in preparation for this suit, the $500 he had in the post office, the state check for $1,080 he had when he first testified, the like sum he received in May, 1933, or any account of his receipts from his insurance business from which he received $990 in 1932, and the proof shows he received $309.69 from that business in the month of January, 1933, and no account at all of the receipts for succeeding months. Since Mrs. Ezell names but a few of the items that make up her estimate of $20,000 as his worth, we can place but little confidence in its correctness; but when we take his own figures in his last deposition and consider what he admitted and what he omitted, we feel perfectly sure he is now worth all of the $14,000 he said in his first deposition if not more.

### Mrs. Ezell's Contribution.

The title to the farm, to the home, and to the vacant lot is in both of them.

When they bought these two lots, Mrs. Ezell says they were bought on time, and that Mr. Ezell would make one payment and she would make the next. Mr. Ezell does not dispute this, but says he thinks he repaid her. She says he did not. Mrs. Ezell does not claim to have contributed any money to the purchase of the farm. She testifies that, with the exception of two stoves, she bought and paid for all the furniture in the house; and that when her husband became a candidate for tax commissioner, he gave up his job, had no income, and she let him have every nickel she made. These matters and the $6,250 balance she claims is due her for her services as deputy commissioner are not to be lightly considered.

She testifies her husband agreed to pay her $1,000 a year for her services as his deputy; he denies that, but admits she did help him; he insists her work was worth no such sum as that. In his statements filed in the county court, Mr. Ezell claimed his expenses for clerical hire during the 7 years his wife was his deputy

were $30,209, but, when he was asked to itemize this and show how much he paid each individual deputy, the total is $22,453, thus leaving $7,756, which, it is argued for her, looks very much like it was retained or claimed by him for the services of his wife. Mrs. Ezell asserted a claim for a balance of $6,250 due her which the trial court refused to allow.

## Division.

Mr. Ezell is 51 years of age and in good health. Mrs. Ezell is 37 years of age, has been in poor health for the last four years, and was forced 3 years ago to submit to a serious abdominal operation which left her with a nervous disorder from which the doctors who testify would not say she would recover. The coincidence of their domestic trouble with the failure of the wife's health, his hiring a detective to shadow her, and his preparation for the separation are suggestive of the thought that Mr. Ezell had tired of marriage to an invalid, and shaped his course and his conduct to rid himself of a wife whom he apparently regarded as an incumbrance. After he has had her labor and her life while in its bloom, he should not cast her adrift without making suitable provision for her future.

Since neither can receive out of this wreck all that should be received, there is no need to go into detail and say how much is allowed for this and how much for that, but the court will award to Mrs. Ezell a judgment for an additional $2,150, of which $150 shall be for her attorney's fees and the former allowance of $4,350 shall be left undisturbed. This $2,150 to be a lien upon the attached property until it is paid.

Judgment reversed upon the original appeal, and affirmed on the cross-appeal; all at the cost of the appellee.