**Inez Turner GARDNER, Appellant,**

v.

**Arthur D. GARDNER, Appellee.**

Court of Appeals of Kentucky.

June 3, 1955.

Marshall Funk, Bowling Green, for appellant.

Joe S. Garman, Bowling Green, for appellee.

STANLEY, Commissioner.

In granting the appellant, Mrs. Inez Turner Gardner, a divorce from Arthur D. Gardner on the ground of cruelty, the court awarded her $1,200 alimony. The question for review is whether or not that sum is inadequate.

The parties were married in 1939. They moved to Louisville in 1942, and during the following two and a half years Mrs. Gardner earned $6,800 working in a war plant. They purchased a farm in 1945 for $4,750, of which Mrs. Gardner paid $1,000. Title was taken in them jointly. They lived there until 1948, during which period she did the usual work of a farmer's wife. The property was sold in 1948 for $8,500. Gardner bought a house for $3,250 and says that he lived up the difference. He sold this house to his mother, who paid him in currency, he says, but the amount is not revealed. Not long afterward, Gardner bought a duplex apartment in Bowling Green for $7,500, title to which was taken in his name alone. Mrs. Gardner then went to work in a drug store, and up until the time of the separation in June, 1954, she had earned about $6,000. When employed at all, Gardner earned comparatively little, although he is now only 51 years old, and his only complaint is that he is nervous. During all the period of their married life Mrs. Gardner has not only supported herself but contributed something to the support of her husband. Gardner concedes that at one time he had some savings investments of perhaps $2,000 which he sold and then used the money. He has an automobile worth about $1,400 and owes his mother $1,400, according to his testimony. The appellee seems to have lived a life of ease, while his wife worked quite continuously. No children were born to the marriage.

Mrs. Gardner left her husband briefly on several occasions. In May, 1953, she left him, she testified, because of his cruelty. They entered into an agreement on June 9, 1953, which recited that difficulties had arisen between them "so that they now contemplate the possibility of divorce." It was agreed they would live apart for three months during which period they would "make conscientious efforts to resolve their difficulties and resume their marital relationship." However, it was provided that after the separation of three months, "either party may file suit for divorce upon grounds now existing." It was further agreed that the furniture in the home "is and shall remain the sole property" of Mrs. Gardner, and that the apartment property "is and shall remain the sole property" of Mr. Gardner. The document recites that Mrs. Gardner "has heretofore advanced" to him "a loan of money in the amount of $1,000" and he agreed to repay it. Following the provision that neither party would molest the other during the three months period, it was "further agreed that no divorce proceeding will be brought during said period, and it is finally agreed that in the event Inez Turner Gardner does institute divorce proceedings, she will not demand any alimony or any further property settlement other than that contained in this agreement."

According to Mrs. Gardner, at her husband's insistence and upon his promises that he would treat her better and be good to

her, she returned to him on July 5th, which was within a month of the execution of the separation agreement. But she testified that he resumed his mistreatment. They separated finally in June, 1954. Gardner's testimony is that he went back to his wife "because she had almost demanded that I do that" and that he had not mistreated her. His testimony throughout is indefinite, except to say that it had been agreed when they married that he should have what he earned and she should have what she earned. It is shown that some improvements had been made to the apartment house after its purchase. Evidence of its value is vague and indefinite. Mrs. Gardner says her husband had been valuing it from $10,000 to $12,000. He testified it was worth $8,000.

 Under the circumstances of this case, it seems to us $1,200 alimony is inadequate. Accepting $10,000 as the valuation of the property and deducting $1,000 that she had invested in it and which has been repaid, we have a net of $9,000. We think that she should be awarded a judgment for $3,000 instead of $1,200 unless the provisions of the separation agreement are to be regarded as denying her anything at all. Comparable allowances were made in Burns v. Burns, 173 Ky. 105, 190 S.W. 683; Ezell v. Ezell, 260 Ky. 775, 86 S.W. 2d 998; Patterson v. Patterson, Ky., 266 S.W.2d 91.

 It is apparent that the trial court did not regard as binding the provision as to no alimony contained in the separation agreement. Disregarding the appellant's testimony that she had been led to understand that its terms were dependent upon an action for divorce being filed during the three months probationary separation, we think it must be so construed. The agreement to repay the $1,000 advanced by the wife related to an independent business transaction and was certainly no more than the law would have given her since no interest was paid nor any share in the profit made on the farm. The husband did not deny the wife's claim that she had bought and paid for the furniture. There

is left the bare agreement that if the wife should sue for divorce, she would demand no alimony. Where a married couple have already separated, an alimony or property settlement, if fair on its face, will be upheld in a subsequent divorce action. Corrigan v. Corrigan, 305 Ky. 695, 205 S.W.2d 495.

 Aside from the question of public policy of enforcing a wife's agreement never to claim alimony, here there was a reconciliation and cohabitation for approximately a year. The effect was to annul the provisions of the instrument of an executory nature, for the consideration failed. Hendricks v. Hendricks, 4 Ky.Law.Rep. 724; Hoskins v. Hoskins, 201 Ky. 208, 256 S.W. 1; Cole v. Waldrop, 204 Ky. 703, 265 S.W. 274; Ray v. Ray's Ex'x, 249 Ky. 347, 60 S.W.2d 935; Elliott v. Turner, 251 Ky. 78, 64 S.W.2d 462.

The judgment is reversed with directions to award the wife $3,000 alimony.

SIMS, J., not sitting.