**Albert R. GORDON, Sr., Appellant,**

v.

**Minnie Ray GORDON, Appellee.**

Court of Appeals of Kentucky.

May 13, 1960.

Ernest G. Baxter, Stanford, for appellant.

James F. Clay, Danville, for appellee.

STEWART, Judge.

The question presented on this appeal is whether a separation agreement between appellant, Albert R. Gordon, Sr., the husband, and appellee, Minnie Ray Gordon, the wife, was abrogated when the parties thereafter became reconciled and resumed cohabitation.

After some twenty-nine years of marriage, during which period of time there were many separations, these parties came to a final parting of the ways in August of 1957. The Chancellor found the precipitating cause of the final breach was appellant's continuing affair with another woman, one Belle Overstreet, the wife of a former tenant of his.

During a marital storm in 1956, which brought about a separation just prior to the final one, appellant and appellee agreed upon a property settlement which was reduced to writing and executed. By this agreement, dated July 2, 1956, he obligated himself to pay her $40,000 in full satisfaction of her property rights, and this sum of money was thereafter paid to her.

On April 12, 1957, the parties undertook to effectuate a reconciliation, which turned out to be the last one, when they again commenced living together on that date. Appellee had remaining $37,300 of the $40,000 she received under the separation agreement and this sum she delivered to appellant to enable him to purchase a farm and livestock with which to stock it. All this property was conveyed or transferred solely to him. Appellee testified, and the Chancellor found, this attempt on her part to

patch up the rupture between them and the turning over to him of the money was based upon appellant's promise to discontinue his relationship with his paramour.

For five months they undertook to live together in peace and harmony and then appellee left, claiming he had broken his promise to stay away from the Overstreet woman. Soon thereafter she sued for divorce on the grounds of adultery, cruel and inhuman treatment, and cruel beating or injury or attempt at injury. See KRS 403.020(2) (b) and (3) (b) and (3) (c) for a detailed description of these grounds. She also asked restoration of her property under the separation agreement, namely, the amount she had advanced to him upon their resumption of the marital status. The Chancellor granted her a divorce on the cruel and inhuman treatment ground and decreed that the $37,300 should be restored to her as her individual property. This appeal followed.

It is the argument of appellant that the bare fact of reconciliation of the parties operated as a matter of law to rescind the separation agreement wherein the property rights of the parties were settled. Appellee contends the intention of the parties at the time the reconciliation was attempted should control the question in regard to the rescission of the property settlement.

It has been held in this jurisdiction that the question of whether a fully executed property settlement, based upon a separation agreement, is abrogated by a reconciliation and resumption of cohabitation depends upon the intention of the parties. See Hall v. Hall, Ky., 328 S.W. 2d 541; Goodaker v. Littell, Ky., 314 S.W. 2d 539, and King v. King, Ky., 274 S.W.2d 656, 657. In 17A Am.Jur., Divorce and Separation, sec. 914, p. 100, it was said: "* * * The determinative intent (to nullify a property settlement) may be one that was expressed in the original contract, or in a subsequent agreement; otherwise the intention may be shown by the acts and conduct of the parties and the sur-

rounding circumstances. * * *" We believe this excerpt from the King case, cited above, states the Kentucky rule that will govern the disposition of the case at bar:

"There is no legal prohibition against a husband and wife entering into a contract fixing their property rights in contemplation of an immediate separation. (Citations omitted.) It is usually held, however, that if the parties subsequently become reconciled and resume cohabitation, the property settlement is thereby rescinded and nullified. (Citations omitted.) But there is an exception to the last rule. The exception arises in those cases where the provisions of the property settlement agreement have been completely executed. As pointed out in Ray v. Ray's Ex'x, 249 Ky. 347, 60 S.W.2d 935, where the terms of the property settlement have been executed and the parties subsequently become reconciled and resume cohabitation, the court will look to the intention of the parties to determine whether it was intended that the reconciliation should nullify the property settlement." (Citations omitted.)

Let us now test the findings of fact of the Chancellor by the foregoing principles, since we are bound by such findings, as regards disputed evidence, unless they are clearly erroneous. See CR 52.01.

Appellant frankly admitted in his deposition he became infatuated with the Overstreet woman, some four or five years before his wife permanently left him, and that he had kept company with her somewhat regularly until he and his wife were reunited on April 12, 1957. It is apparent from a reading of the record that this woman readily yielded to his advances. It was brought out that appellant so completely won her over that in 1956 her husband sued him for alienation of his wife's affections and received $2,000 in settlement of that suit from appellant. Appellee

knew of appellant's strong attachment for the Overstreet woman and knew of the suit. She testified he boasted of his amorous exploits with his newly-found object of attraction and often compared her with the other woman in an unfavorable light. On one occasion, appellee and the other woman had an altercation that wound up in a physical encounter. The Overstreet woman was later tried and fined as a result of this, and appellant paid her fine, which fact appellee learned later. The Chancellor determined it was appellant's refusal to give up his association with the Overstreet woman that caused the separation of the parties in 1956, and that the outcome of this break in their marriage occasioned the property settlement of July 2, 1956.

Remarking about the condition under which they resumed cohabitation, the Chancellor said: "The proof also clearly shows that the inducement for their resumption of living together after they had separated in 1956 and had made this contract of separation, was his promise not to have anything to do with Mrs. Overstreet. * * *" Appellant testified he had fully kept his bargain with appellee by staying away from the Overstreet woman after he and his wife began living together on April 12, 1957. The Chancellor concluded from the evidence, however, that appellant, although he had given appellee his word never to be out "with that woman again," had not lived up to his pledge. The Chancellor's opinion stated that "he did keep company with her (the Overstreet woman) and taunted plaintiff (appellee) with recitals about it."

Commenting upon appellee's right to have the $37,300 returned to her, because appellant had failed to carry out the intention he and she had agreed upon, the Chancellor had this to say on that point: "* * * I do not think that any other conclusion, under the proof, is maintainable. In these circumstances, can it with reason be said that she intended to give him this money unconditionally—whether he resumed his relations with the Over-

street woman or not? I cannot believe so. I cannot believe that after all the trouble Mrs. Gordon had experienced because of Mr. Gordon keeping company with Mrs. Overstreet, and after she had exacted from him the promise, before she would agree to again live with him, that he cease keeping company with that woman, it was her intention to allow him the money regardless of his observing his promise."

A review of the evidence in this case leaves us with the firm and definite conviction that appellant did not fulfill the assurance he gave his wife to remain true and steadfast to her, with the result that we must conclude it was not her purpose to allow him to retain the money when he fell down on his promise.

■ We have another view of this controversy which is not altogether inconsistent with the Chancellor's holding, and that is appellee, upon the consummation of the property settlement coupled with her receipt of the $40,000 paid her, became the unconditional owner of this sum. The mere fact of her going back to resume marital relations with appellant did not of itself bestow upon him this property. She could divest herself of her right in this money only by some overt act that clearly indicated her intention to surrender such a right.

■ The evidence is lacking that she ever absolutely relinquished her ownership of the money. The most that she did do, as previously stated, was to allow appellant to use *her funds*, in part, to purchase a farm and the livestock with which to stock it. This act, standing alone, would not have the effect of transferring ownership of the money to him. The fact, too, that he took title to the land and the livestock in his name did not divest her of her interest in the money. Husbands have many times taken similar liberties with their wives' property, and the courts have uniformly upheld the latter's claim of ownership to such property upon a dissolution of the marriage contract.

Thus, in the case at bar, we conclude the Chancellor correctly awarded appellee money that was rightfully and lawfully hers.

Wherefore, the judgment is affirmed.